1  David T. Pritikin (SBN 2256339) (admitted pro hac vice)
   *e-mail: dpritikin@sidley.com*
2  Richard A. Cederoth (SBN 6185199) (admitted pro hac vice)
   *e-mail: rcederoth@sidley.com*
3  Douglas I. Lewis (SBN 6216438) (admitted pro hac vice)
   *e-mail: dilewis@sidley.com*
4  SIDLEY AUSTIN BROWN & WOOD
5  Bank One Plaza
   10 South Dearborn Street
6  Chicago, Illinois 60603
   Phone: (312) 853-7000
7  Fax: (312) 853-7036

8

9  Bryan Anderson (SBN 170666)
   *e-mail: bkanderson@sidley.com*
10 SIDLEY AUSTIN BROWN & WOOD LLP
   555 California Street, Suite 2000
11 San Francisco, CA 94104
   Phone: (415) 772-1200
12 Fax: (415) 772-7400

13 Attorneys For Microsoft Corporation

14              IN THE UNITED STATES DISTRICT COURT
15          FOR NORTHERN DISTRICT OF CALIFORNIA

16 MICROSOFT CORPORATION,                )
17 a Washington corporation,             )
                                         )
18              Plaintiff,               )
                                         )
19                                       )   **MICROSOFT CORPORATION'S**
                                         )   **COMPLAINT AND DEMAND**
20        v.                             )   **FOR JURY TRIAL**
                                         )
21 COMPRESSION LABS, INC.., a Delaware   )
   corporation and FORGENT NETWORKS, INC.,)
22 a Delaware corporation                )
                                         )
23        Defendants.                    )
                                         )

24

25

26

27

28

**EXHIBIT**

A

Dockets.Justia.com

## NATURE OF THE ACTION

1.      Microsoft Corporation ("Microsoft"), files this complaint against Compression Labs, Inc. ("CLI") and Forgent Networks, Inc. ("Forgent') (collectively referred to herein as "CLI/Forgent" or "Defendants") seeking, among other relief, the following:  (a) a declaratory judgment that U.S. Patent No. 4,698,672 ("the '672 patent") (attached as Exhibit A) is not infringed, is invalid and is unenforceable, in whole or in part, for the reasons alleged below; (b) a declaratory judgment that Microsoft has a direct and/or implied license to the '672 patent; (c) a declaratory judgment that CLI/Forgent be estopped from attempting to enforce the '672 patent; and (d) damages and declaratory relief under statutory and common law for CLI/Forgent's statutory unfair competition, equitable estoppel and patent misuse.

### A.      Microsoft's Interest In This Action

2.      CLI/Forgent's has attempted to enforce the '672 patent against a number of Microsoft's customers including in several actions filed by CLI in the Eastern District of Texas, namely *Compression Labs, Inc. v. Agfa Corp., et al.*, Civil Action No. 2:04-CV-158 DF (E.D. Tex.), *Compression Labs, Inc. v. Dell, Inc., et al.*, Civil Action No. 2:04-CV-159 DF (E.D. Tex.), and *Compression Labs, Inc. v. Acer America Corporation, et al.*, Civil Action No. 2:04-CV-294 DF (E.D. Tex.) (collectively, "the Texas Actions").

3.      CLI/Forgent has alleged in the Texas Actions that the '672 Patent covers the international standard adopted by the Joint Photographic Experts Group (the "JPEG Standard").

4.      Microsoft designs, makes, and licenses some computer software products ("Microsoft Products") that include or incorporate functionality operable in accordance with the JPEG Standard.  Microsoft licenses one or more of such Products to at least the following entities that CLI/Forgent has accused, in the Texas Actions, of infringing the '672 patent: Apple Computer, Dell, Inc., Fujitsu USA Incorporated, Gateway, Inc., Hewlett-Packard Company, and

International Business Machines Corporation. These Microsoft customers, and others, are declaratory judgment plaintiffs in *Agfa Corp., et al. v. Compression Labs, Inc., et al.*, Civil Action No. 04-818 SLR (D. Del.) ("the Delaware 818 Action").

5.     CLI/Forgent has alleged in the Texas Actions that Microsoft's customers infringe the '672 patent by selling, offering to sell, using, and importing products that incorporate or include one or more Microsoft Products. Accordingly, some of CLI's patent infringement claims in the Texas Actions relate to Microsoft Products. Based upon CLI's actions in the Texas Actions, Microsoft reasonably expects that CLI will assert the same or similar infringement allegations against the same parties in the Delaware 818 Action if and when the Texas Actions are dismissed prior to determination of the merits of CLI's claims.

6.     In addition to bringing suit against Microsoft's customers in the Texas Actions, CLI/Forgent has suggested to Microsoft, in correspondence, that Microsoft needs to take a license under the '672 patent to "compensate CLI for [Microsoft's] use of JPEG encoding and decoding technology covered by the '672 Patent." Therefore, Microsoft has an objectively reasonable apprehension that CLI/Forgent will bring suit against it.

7.     An actual controversy exists between Microsoft and the Defendants, and Microsoft is entitled to declaratory relief in the form requested herein.

**B.     Factual Background**

8.     The JPEG Standard was first adopted in September 1992, following years of research and collaboration in the international standards community, which included the International Standards Organization ("ISO"), the International Telegraph and Telephone Consultative Committee ("CCITT") and the American National Standards Institute ("ANSI").

9.     The JPEG Standard defines an international standard for compression, decompression, transmission and storage of digital still images – anything from photographs to documents to graphics. The JPEG Standard permits users to store and share digital still images among products from various manufacturers without concern over compatibility. Products that incorporate the JPEG Standard include a wide variety of hardware devices or software applications such as personal computers, personal digital assistants, digital cameras, digital camcorders, cellular telephones, Internet browsers, document or photo viewers, editing software, printers, scanners, fax machines and the like. The most common representation of the JPEG Standard is the ".jpg" file extension used on computers and related devices to store photographs and other digital still images.

10.     CLI/Forgent has been and is attempting unlawfully to subvert the JPEG Standard and to extract millions of dollars in unwarranted profits based on consumers' long reliance on the JPEG Standard through their purchases of JPEG-enabled products. Now that industries and their customers have adopted and become dependent on the JPEG Standard, CLI/Forgent is attempting to assert the '672 patent against the standard, insisting that the '672 patent covers technology embodied in and essential to practicing the JPEG Standard.

11.     CLI/Forgent has initiated a campaign of threats, litigation and other tactics designed to cause doubt and uncertainty and ultimately to prevent others from freely practicing the JPEG Standard. CLI/Forgent intends to force manufacturers to make unwarranted licensing payments to CLI/Forgent, thus denying producers and users of JPEG-enabled products the benefits and efficiencies of a ubiquitous standard. CLI has sued more than 30 companies that refused to capitulate to its licensing demands, wrongfully alleging that the practice of the JPEG Standard infringes the '672 patent.

12.    CLI/Forgent's campaign to enforce the '672 patent stems from a history of deception, delay and improper behavior. CLI's unlawful conduct is highlighted, in part, by the following:

i)    CLI intentionally failed to disclose known, material prior art to the United States Patent and Trademark Office (the "Patent Office");

ii)    CLI engaged in a pattern of misleading conduct, silence and misrepresentations about the purported relevance of the '672 patent to the JPEG Standard;

iii)    CLI/Forgent unreasonably and inexcusably delayed in notifying Microsoft and its customers of their alleged infringement; and

iv)    CLI/Forgent committed deceptive and misleading conduct by claiming to have acquired control over the technology in the JPEG Standard that companies have incorporated into their products, despite the knowledge that: (a) the '672 patent is not infringed, is invalid and is unenforceable; (b) the '672 patent was obtained through fraud on the Patent Office by failing to disclose anticipatory prior art; and (c) CLI failed to disclose the purported applicability of the '672 patent to the standard-setting community, during its participation in the adoption of the JPEG Standard.

I.    THE PARTIES

13.    Microsoft is a corporation organized and existing under the laws of Washington. Microsoft's principal place of business is in Redmond, Washington. Microsoft designs, manufactures, and licenses some computer software products that incorporate JPEG algorithms and are designed to be compliant with the JPEG Standard. Microsoft, and its customers, are consumers of the technology incorporated in the JPEG Standard, which CLI/Forgent unlawfully and fraudulently maintains infringes CLI's invalid and unenforceable '672 patent. Microsoft does business in this and other judicial districts.

14.     Defendant CLI, a corporation organized and existing under the laws of Delaware, is a wholly-owned subsidiary of Defendant Forgent. On information and belief, CLI has no principal place of business and currently engages in no operations other than the licensing of one or more patents through attorneys controlled by Forgent. CLI claims to be a co-owner of the '672 patent. CLI asserts, both directly and through Forgent, that no one may make, offer to sell, sell or use JPEG-enabled devices in the United States without a license to the '672 patent from CLI/Forgent. In the Texas Actions, CLI has sued Microsoft's customers and other parties for allegedly infringing the '672 patent by making, using, offering to sell, or selling JPEG-enabled products, including those incorporating Microsoft Products. Some of Microsoft's customers have filed a declaratory judgment actions against defendants in Delaware. Some of Microsoft's customers that have received infringement allegations from CLI based in part upon their licensing, sale or distribution of products including or incorporating Microsoft Products are resident in this judicial district.

15.     Defendant Forgent is a corporation organized and existing under the laws of Delaware. Forgent's principal place of business is at 108 Wild Basin Drive, Austin, Texas. Forgent's stock is publicly traded on the NASDAQ stock exchange (Stock Symbol: FORG). Forgent claims its patent licensing program is focused on generating license revenues relating to Forgent's data compression technology, which includes the fraudulently-obtained '672 patent. Forgent has been and is asserting the '672 patent in licensing and litigation through its wholly-owned subsidiary, CLI. On information and belief, Forgent is registered to, and does, transact business in California.

16.     With respect to all or part of the conduct alleged herein, Defendants CLI and Forgent acted as one another's alter egos and/or agents. To that extent, CLI and Forgent are

jointly and severally liable for the damages and other harm that either of them caused to Microsoft.

## II.    JURISDICTION AND VENUE

17.    This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, the United States patent laws, and the laws of California. An actual, substantial and continuing justiciable controversy exists between Microsoft and Defendants that requires a declaration of rights by this Court.

18.    The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331, 1337 and 1338. The Court has supplemental jurisdiction over Microsoft's state law claims under 28 U.S.C. § 1367.

19.    The Court has personal jurisdiction over Defendants by virtue of, among other things, Defendants' attempts to enforce the '672 patent against Microsoft's customers located in this district and meetings relating to the '672 patent with Microsoft's customers in this district. On information and belief, Defendants or their agents on their behalf have licensed rights under the '672 patent to one or more companies in this judicial district.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## III.    BACKGROUND OF DEFENDANTS' UNLAWFUL CONDUCT

### A.    CLI Defrauded the Patent Office in Obtaining the '672 Patent.

21.    On October 27, 1986, CLI filed with the Patent Office an application (serial number 06/923,630) ("the '630 application") that ultimately issued as the '672 patent on October 6, 1987. The '630 application named Wen-hsiung Chen ("Chen") and Daniel J. Klenke ("Klenke") as the inventors. Chen and Klenke, then CLI employees, assigned their rights to CLI. The '630 application, authorized by at least CLI's Vice President James M. Walker ("Walker"),

1    was accompanied by a power of attorney appointing David E. Lovejoy ("Lovejoy") and the

2    attorneys of Fliesler, Dubb, Meyer & Lovejoy as authorized agents to prosecute the application.

3        22.    When filing the '630 application, Chen and Klenke submitted to the Patent Office

4    a declaration under penalty of perjury attesting that they were the original, first and joint

5    

6    inventors of the subject matter claimed in the '630 application. On behalf of themselves and

7    CLI, they acknowledged in their declaration a duty to disclose to the Patent Office information

8    material to the examination of the '630 application under 37 C.F.R. § 1.56 ("Patent Rule 56").

9        23.    Under Patent Rule 56, at all relevant times relating to the '630 application, a duty

10   of candor and good faith toward the Patent Office rested on at least the following individuals: (i)

11   Chen and Klenke; (ii) every attorney or agent who prepared or prosecuted the '630 application,

12   

13   including Lovejoy and others at his law firm involved in the '630 application; and (iii) every

14   other individual associated with Chen, Klenke, or CLI that was substantively involved in the

15   preparation or prosecution of the '630 application. Patent Rule 56 further mandated that all such

16   individuals had a duty to disclose to the Patent Office any information they were aware of that

17   was material to the examination of the '630 application. Patent Rule 56 specified that

18   information was material if there was "a substantial likelihood that a reasonable examiner would

19   consider it important in deciding whether to allow the application to issue as a patent."

20   

21       24.    Despite their duty of candor and good faith, individuals employed by CLI

22   intentionally withheld material information from the Patent Office during the pendency of the

23   '630 application. The information withheld was material and, had the examiner been aware of

24   the information at any time before issuance of the '672 patent, the patent would not have issued

25   or, at the very least, would have issued with a substantially different scope. From these

26   circumstances, including the high degree of materiality, the decision not to disclose the

27   

28

1  information to the Patent Office was, on information and belief, made with the intent to defraud

2  and/or deceive the Patent Office into issuing the '672 patent.

3      25.    Prior to the issuance of the '672 patent, CLI and others substantively involved in

4  the preparation and prosecution of the '672 patent were in possession of the following material

5

6  information: (i) the prior public use of the technology at issue in the '630 application by a

7  company called Widcom more than a year before the October 27, 1986 filing date of the patent

8  application; (ii) the prior commercial sale of the technology at issue in the '630 application, as

9  incorporated into a videoconferencing codec (short for "coder/decoder") manufactured and sold

10  by Widcom, called the Widcom VTC-56, more than a year before the October 27, 1986 filing

11  date of the application; and (iii) information about Widcom and the Widcom VTC-56

12  demonstrating that the invention sought for patenting was known or used by others in the United

13

14  States before the time of the claimed invention thereof by Chen and Klenke.

15      26.    The Widcom VTC-56 anticipates the claims of the '672 patent. CLI and others

16  involved in the application for the '672 patent knew the details of the Widcom VTC-56 from a

17  close and adversarial relationship with Widcom.

18      27.    As alleged below, over several years preceding the '630 application that gave rise

19  to the '672 patent, CLI and Widcom were engaged in extensive litigation substantially relating to

20  Widcom's commercialization of the Widcom VTC-56. CLI ultimately defeated Widcom

21

22  through its various lawsuits and purchased in bankruptcy the rights, assets and technologies

23  relating to the Widcom VTC-56. CLI took full legal title to the assets and important documents

24  relating to the Widcom VTC-56 before the '672 patent issued. Despite CLI's extensive

25  knowledge of the Widcom VTC-56 obtained as a result of the litigation with Widcom and

26  acquisition of the Widcom VTC-56 device, neither CLI nor anyone else responsible for the '630

27

28

1  application disclosed the prior sales of the Widcom VTC-56 or other related invalidating prior art

2  to the Patent Office.

### 1. CLI Learns Detailed Information About the Widcom VTC-56 Prior Art in Trade Secret Litigation Against Widcom.

28.     CLI was first incorporated in California in December 1976.  In late 1979, a former

principal of CLI left CLI to start another company, called Widergren Associates.  Other CLI

employees later became employed by Widergren Associates.  Widergren Associates was

incorporated in 1983 and renamed Widergren Communications ("Widcom").

29.     On or about June 4, 1981, CLI filed a lawsuit in the Superior Court of the State of

California, County of Santa Clara, Case No. 476629, against Widcom and several of its

employees alleging, among other things, trade secret misappropriation.  The trade secret lawsuit

charged that Widcom and the other defendants misappropriated certain CLI proprietary

information relating to the compression of data associated with video and other signals.  The

lawsuit focused on Widcom's development of a prototype video data compression system for

Bell & Howell.  On information and belief, the Bell & Howell prototype was a 256 Kbps video

compressor and the Widcom VTC-56's predecessor.

30.     On or before March 23, 1983, while the trade secret lawsuit was pending,

Widcom was awarded a contract by the Defense Advanced Research Projects Agency

("DARPA"), an agency of the U.S. Department of Defense, to produce a prototype 56 Kbps

video conferencing codec.  On information and belief, Widcom successfully developed and

delivered to DARPA at least five 56 Kbps video conferencing codecs, together with various

reports and test results, on or before the conclusion of the contract.  On information and belief,

the 56 Kbps codec developed and delivered under the DARPA contract was thereafter

commercially marketed and sold by Widcom as the Widcom VTC-56.

31.    On or about May 23, 1983, CLI and Widcom entered into a settlement agreement relating to the trade secret lawsuit.  That same day, the court entered an Order for Permanent Injunction Pursuant to Stipulation ("Permanent Injunction").  Under the terms of the settlement and Permanent Injunction, Widcom agreed to disclose to CLI (as assignee of Widcom's Bell & Howell contract) "any and all inventions made by or on behalf of Widcom as a direct result of the work performed" under the Bell & Howell contract.

32.    On information and belief, as a result of the litigation, including the disclosures required by the Permanent Injunction, CLI became aware of the details of the Widcom VTC-56.

**2.    As Widcom Continues to Commercialize the Widcom VTC-56, CLI Initiates Further Litigation Against Widcom.**

33.    After the settlement of the trade secret lawsuit, Widcom entered into a series of agreements to sell and/or distribute the Widcom VTC-56, including agreements with Comsat General Corp. (dated June 1983), Vitalink Corp. (dated July 1983) and Pierce Phelps, Inc. (dated November 1983).

34.    Widcom's development and commercialization of the Widcom VTC-56 was publicized in 1983 and 1984 on at least the following occasions:

i)    In November 1983, *Electronics* magazine reported that the Widcom VTC-56 was being given to the U.S. Navy for testing.

ii)    In November 1983, PR Newswire reported that Widcom's "shipment of its new video conferencing codec...will begin in early spring of 1984.  Initial production models will be available by the end of January 1984."

iii)    In January 1984, several Widcom employees authored an article published in *Electronics* entitled "Codec squeezes color teleconferencing though digital telephone lines," which focused on the Widcom VTC-56.

iv)     In May 1984, *Computerworld* magazine publicized the availability of the Widcom VTC-56, describing it as a "coder-decoder (that) allows transmission of color TV pictures via a 56 kbits telephone or satellite link."

v)     In June 1984, *MIS Week* magazine reported the introduction of Widcom's VTC-56 codec.

vi)     In August 1984, *Electronic Imaging* magazine reported that Widcom displayed its VTC-56 coder-decoder at the International Communications Association's annual meeting in Las Vegas, Nevada.

35.     On information and belief, Widcom's commercialization of the Widcom VTC-56 prompted CLI to take further legal action against Widcom. In or about September 1984, CLI successfully petitioned the Santa Clara County Superior Court to appoint Dr. Harry Jones as Special Master "to review the activities of defendants in the development, manufacture, sale or license of video data compression devices." The Special Master was directed to submit a report to the Court regarding whether Widcom was in compliance with the May 1983 Permanent Injunction.

36.     The Special Master released his report in November 1985, but in the intervening months Widcom continued to publicize, market and sell the Widcom VTC-56, including:

i)     In September 1984, Widcom published its SEC Form 10-K for the fiscal year ending June 30, 1984, which stated in part:

> In March 1983, the Company entered into a contract with the Defense Advance Research Projects Agency (DARPA), an agency of the United States Department of Defense, to produce one prototype video teleconferencing codec. This contract was completed early in 1984 and eight units of the resulting product, the VTC-56, were shipped in June 1984.

ii)    In October 1984, Widcom announced its new motion color system, called the PVS (Personal Videoconferencing Station), stating: "When used in conjunction with Widcom's VTC-56 coder/decoder, users may telephone across the country or around the world using one of several common carriers with video transmitted and received at 56 kbps over digital phone lines or satellite links."

iii)    That same month, Widcom received a "Teleconferencing Award" at the Third Annual Teleconference Magazine Awards Dinner (TeleCon IV) for its "Development of the Widcom 56 kbps Codec."

iv)    In May 1985, Widcom signed a distribution agreement with Telefonbau und Normalzeit GmbH ("Telenorma"), whereby Telenorma ordered three Widcom VTC-56s for testing and registration with the German government.

v)    In June 1985, Widcom signed a distribution agreement with Jeumont-Schneider, whereby Jeumont-Schneider ordered two VTC-56s for experimentation and approval by the French Administration.  That same month, Widcom also signed a distribution agreement with Mitsui & Co., Ltd. that included an initial purchase of four Widcom VTC-56s.

vi)    In September 1985, Widcom published its SEC Form 10-K for the fiscal year ending June 30, 1985, reporting that it had shipped 57 Widcom VTC-56s.  Widcom also announced it had introduced in August 1985 its next-generation codec, the VTC-56B.

vii)    In November 1985, DARPA issued a report titled "Design, Development and Installation of a two-node, color video teleconferencing system for the U.S. Navy," which described the Widcom VTC-56 as "the heart of the Navy Video-Teleconferencing System."  The report states that the Widcom VTC-56 went into operation in August 1985.

37.     In November 1985, Special Master Jones issued his Report concerning Widcom's compliance with the May 1983 Permanent Injunction.  The Report concluded that Widcom should be held in contempt of court because:  (a) Widcom had signed 14 licensing, sales, distribution and development contracts between February 1982 and June 1985; and (b) Widcom provided information on the VTC-56 to the public and to customers, including a March 1983 DARPA Algorithm Report, a 1984 Widcom VTC-56 Manual, and a collection of articles written and lectures given by Widcom employees from 1983 to 1985.

### 3.     Details of the Widcom VTC-56 Are Shared with CLI's Employees and Directors.

38.     On or about December 2, 1985, CLI successfully petitioned the Santa Clara Superior Court to modify the protective order in the trade secret lawsuit to allow the Special Master Report to be distributed to "CLI employees and directors."  According to CLI's 1985 SEC filings, its directors at the time included John E. Tyson, James M. Walker, Arthur G. Anderson, Thomas J. Davis, Jr., John R. Dougery, Robert E. Schroeder and David A. Wegman.

### 4.     CLI Sues Widcom for Patent Infringement Over the Widcom VTC-56, in Which CLI Acknowledges Widcom's Commercialization of the VTC-56.

39.     In December 1985, CLI filed a patent infringement lawsuit against Widcom in the United States District Court for Northern District of California (the "Widcom Patent Suit").  The Widcom Patent Suit did not involve the '672 patent (the application for which had not yet been filed), but rather CLI alleged that Widcom infringed two related patents.  The Widcom Patent Suit, which focused primarily on the Widcom VTC-56, claimed that Widcom had:  (a) "commenced manufacture" of the Widcom VTC-56; (b) "marketed and distributed" the Widcom VTC-56; and (c) entered into distribution or resale agreements with at least five distributors relating to the Widcom VTC-56.  CLI was represented in the Patent Suit by, among others, David Lovejoy of Fliesler, Dubb, Meyer & Lovejoy.

40.     In June 1986, Widcom filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California (Case No. 586-02619-M).  In August 1986, CLI Vice President of Finance, James M. Walker, submitted a Proof of Claim on behalf of CLI in the Widcom bankruptcy proceeding.  In its Proof of Claim, CLI stated it was a claimant of Widcom in excess of $1 million because of the pending Widcom Patent Suit.

### 5.     CLI Files the '630 Application But Fails to Disclose the Widcom VTC-56 Prior Art.

41.     On October 27, 1986, while the Widcom Patent Suit was pending, Chen and Klenke filed the '630 application in the Patent Office.  As alleged above, the Power of Attorney filed with the '630 application appointed Lovejoy as the patent lawyer authorized to prosecute the '630 application – the same lawyer who was listed as counsel of record for CLI in the Patent Suit involving the Widcom VTC-56.  The Power of Attorney was executed for CLI by Walker, who had previously executed the Proof of Claim in the Widcom bankruptcy proceeding.  On information and belief, as a director of CLI, Walker also had knowledge of the Special Master Report discussing the Widcom VTC-56.

42.     According to the prosecution history of the '672 patent, neither the inventors nor CLI's patent attorneys ever disclosed any prior art to the Patent Office during the prosecution of the '630 application.  Each of the five references cited on the face of the '672 patent were discovered by the patent examiner.  There was never any disclosure relating to the Widcom VTC-56, a device that anticipates, or at the very least makes obvious, the claims of the '672 patent and, on information and belief, was known in detail by CLI and those substantively involved in the prosecution of the '630 application.

6.    **While the '630 Application Is Pending, CLI Purchases Widcom's Assets Relating to the Widcom VTC-56 in Bankruptcy.**

43.    On or about June 23, 1987, the Patent Office issued a Notice of Allowance for the filed claims of the '630 application.  Lovejoy mailed the issue fee for the '672 patent to the Patent Office on or about July 9, 1987.  On or about July 10, 1987, CLI published a press release announcing the settlement of the Patent Suit.  CLI's press release explained that Widcom had agreed to transfer to CLI technology related to the Widcom VTC-56:

> Following commencement of CLI's lawsuit in December 1985, Widcom filed for protection from creditors in the U.S. Bankruptcy Court on June 6, 1986.  In June 1987, a trustee was appointed by the Bankruptcy Court to explore the possible sale of Widcom's remaining assets.  Under the settlement agreement, which was negotiated with the Widcom trustee and approved by the Bankruptcy Court on July 8, Widcom acknowledged the validity of the two CLI patents, as well as Widcom's infringement of them in its manufacture and sale of its VTC-56 videoconferencing codec and its RAPICS 500 data compression device.  Widcom further agrees to the entry of a stipulated judgment against it by the U.S. District Court on CLI's patent infringement claims, and the issuance of a permanent injunction restraining Widcom from further infringement of CLI's patents.  As part of the agreement reached with CLI, Widcom will transfer to CLI full title to all of Widcom's video and data compression technology, including its interest in a manufacturing license previously granted by Widcom to a German distributor of its VTC-56 product, Telefonau und Normalzeit, GmbH.  CLI, in turn, has agreed to purchase from the trustee Widcom's remaining inventory of video and data compression devices, including its existing stock of VTC-56 codecs, RAPICS 500, DCU 192 units and all spares and parts for $150,000.  As part of the settlement, CLI has agreed not to sue those former Widcom customers who purchased VTC-56 codecs prior to the court settlement for infringement of CLI's patents. (Emphasis added.)

44.    On or about July 13, 1987, the bankruptcy court entered an Order Authorizing and Approving Sale of Assets to Compression Labs, Inc. and Settlement Agreement ("Asset Sale Order") that transferred to CLI all of Widcom's

> right, title and interest in and to any invention, know-how, or other technology relating to the compression of data for storage or transmission, including, without limitation, [Widcom's] existing inventory of VTC-56 codecs ... and all engineering drawings or documentation relating to any of the above products.

45. On information and belief, through the litigation of the Widcom Patent Suit and the Asset Sale Order, CLI and those substantively involved in the prosecution of the '630 application came into possession of all engineering drawings and documentation related to the Widcom VTC-56. At or about this time, CLI also came into possession of Widcom's existing inventory of Widcom VTC-56s.

46. On or about July 17, 1987, CLI and Widcom submitted to the Court a Stipulation for Entry of Judgment and Order of Permanent Injunction ("Judgment") in the Widcom Patent Suit. The Judgment attached as an exhibit the Asset Sale Order from the bankruptcy proceedings. This fact further demonstrates that Lovejoy was aware of the Widcom VTC-56 before the '672 patent issued.

47. Based on the foregoing, during the pendency of the '630 application, the persons substantively involved in prosecuting the '630 application, including Lovejoy and Walker, were aware of the existence, capabilities and materiality of the Widcom VTC-56 and of other material prior art obtained from Widcom. Despite such knowledge, those persons acting on behalf of CLI failed to disclose the Widcom VTC-56 or other prior art to the Patent Office in violation of the patent statutes and their duty of candor under Patent Rule 56. On information and belief, CLI and its agents made a conscious decision to violate their clear obligations by intentionally concealing this material information so as to defraud the Patent Office. As a consequence, CLI's application for the '672 patent issued on October 6, 1987. On information and belief, had the patent examiner been made aware of the material information possessed by CLI and its agents,

1    the '672 patent would not have issued or, at the very least, would have issued with a substantially

2    different scope.

**B.    CLI Deceived the International Standard-Setting Community and Its Members During Development, Approval, and Adoption of the JPEG Standard.**

48.    Before, during and after fraudulently obtaining the '672 patent, CLI participated as a member of several committees that developed and adopted the JPEG Standard.  During its participation in and approval of the JPEG Standard, CLI engaged in a pattern of deceptive silence, misleading statements, and conduct on which Microsoft and its customers reasonably relied to their material detriment in supporting the approval of the JPEG Standard and thereafter incorporating the JPEG Standard into their products.

49.    The JPEG Standard was first adopted and published in 1992 after years of international effort by several standard-setting organizations, including ISO, CCITT and ANSI.

50.    On information and belief, by at least 1992 CLI had studied its patents, including the '672 patent, and had formed the belief that its patents purportedly covered the redundancy coding technology included in the JPEG Standard.  In its March 1992 SEC Form 10-K Annual Report, CLI stated:

> An adaptation of <u>DCT technology, which has been the basis of all CLI products since its inception, is the foundation of the H.261 industry standard, <u>as well as the evolving Joint Picture Experts Group ("JPEG")</u> and Motion Picture Experts Group ("MPEG") standards for multimedia/desktop applications.

> The Company holds seven U.S. patents relating to video compression.  <u>The patents were issued in 1978 or later and cover CLI's scene-adaptive coding and DCT techniques.</u>  (Emphasis added.)

Yet in May 1992, CLI cast a second ballot to approve the JPEG Standard, failing to disclose the '672 patent. Ballot records show that CLI's Padmanabha Rao voted to approve the JPEG Draft International Standard "as presented."

51.     With ballot approval from CLI and other JPEG members, JPEG became the widely-adopted international standard it is today. Published on September 18, 1992 by CCITT as Recommendation T.81, the JPEG Standard was also formally adopted as ISO/IEC International Standard 10918-1 on February 15, 1994. ANSI subsequently adopted the JPEG Standard on January 11, 1999. Annex L to the JPEG Standard does not identify the '672 patent.

52.     On information and belief, before the JPEG Standard had been approved, CLI had formed the incorrect belief that the '672 patent would be infringed by anyone practicing the standard. Nevertheless, throughout the entire period of CLI's participation in the JPEG standard-setting effort, CLI did not answer the multiple calls for disclosure of patents relevant to the standard, choosing instead to keep its patent claims hidden from the JPEG committee. CLI also engaged in a misleading series of statements and conduct. Under the circumstances, CLI's silence and conduct – even as it voted to approve the standard – misled and subverted the standard-setting process. The members of the JPEG standard-setting organizations relied on CLI's silence and conduct in voting to recommend the JPEG Standard, which was in turn relied upon by Microsoft, its customers, and others in commercializing many products during the next 12 years.

C.     **CLI Deceived and Injured Microsoft by Delaying the Filing of Its Lawsuit.**

53.     On information and belief, no later than July 1990, CLI was aware of the JPEG Standard and the redundancy coding algorithms it contained.

54.    On information and belief, by March 1992 CLI had concluded (albeit incorrectly) that it owned patents, including the '672 patent, purportedly covering technology in the JPEG Standard. CLI reported that belief in its SEC Form 10-K Annual Report, as alleged above.

55.    On information and belief, CLI was aware no later than 1990 that the JPEG Standard was being implemented in the market.

56.    On information and belief, early implementers of the JPEG Standard also put CLI on notice of the public implementation of the JPEG Standard, including Microsoft, which incorporated the JPEG Standard into the Microsoft Products. Microsoft customers, Hewlett-Packard Co. and Dell, Inc., began selling computer products that employed Microsoft Products.

57.    In addition, CLI knew or should have known about the use of the JPEG Standard in a variety of different types of software, including browsers, illustration programs, and web-design programs.

58.    Notwithstanding CLI's knowledge as alleged above, on information and belief, CLI made no effort to enforce the '672 patent against any individual or company practicing the JPEG Standard until 2002, more than a decade after learning the details of the JPEG Standard. In the intervening years, the JPEG Standard became deeply entrenched as the preeminent standard for the digital compression, storage and transmission of still images. Indeed, since the adoption of the JPEG Standard, Microsoft and its customers have made significant investments in the implementation of the JPEG Standard. Consumers and other users have created billions of JPEG files and have utilized the JPEG Standard in existing devices and software that will continue for many years to come.

D.    **CLI/Forgent Has Begun an Unlawful Campaign to "Enforce" the '672 Patent in an Effort to Capture the JPEG Standard Illegitimately and to Control the Technology Embodied in the Standard.**

59.    Beginning in 2002, CLI/Forgent changed course on CLI's decade-long policy of non-enforcement of the '672 patent as it relates to JPEG.  In early 2002, CLI/Forgent began an aggressive '672 patent "enforcement" campaign with the apparent goal of capitalizing on the millions of consumers and hundreds of manufacturers grown to depend upon the JPEG Standard.  On information and belief, CLI/Forgent knew that consumers of the technology embodied by the JPEG Standard believed that there were no blocking patents to create barriers to adoption.

60.    Seeking to assert its aging patent (which expires in 2006) against companies and consumers who relied on the JPEG Standard being a widely adopted international standard, CLI/Forgent began in 2002 making royalty demands on companies that make, use or sell the hundreds of products employing the JPEG Standard as a means of extracting potentially millions of dollars in royalty payments to which it is not lawfully entitled.  At the same time, it also made veiled threats in the press against end users of JPEG-enabled products.

61.    On information and belief, CLI/Forgent knew that the threat of potential business interruption or unwarranted damages and the certainty of substantial fees and costs required to defend protracted litigation would deter some JPEG users from challenging the patent and instead cause them to take licenses.  CLI/Forgent has made its assertions of patent infringement to create uncertainty and doubt about the validity of JPEG as a ubiquitous standard and to compel manufacturers of JPEG products to pay it unwarranted sums of money.

62.    CLI/Forgent began and continues its campaign despite actual knowledge that CLI (a) did not disclose material prior art to the Patent Office and (b) failed to disclose the '672 patent to the JPEG standard-setting organizations, thereby causing the JPEG Standard to be adopted with technology that CLI/Forgent only now claims infringes its patent.

63.    CLI/Forgent has proceeded in bad faith with knowledge that the '672 patent is invalid and/or unenforceable.  Further, CLI/Forgent's demands are knowingly and objectively baseless because it knows (a) the '672 patent is invalid, (b) CLI procured the patent by fraud, and (c) the '672 patent is not enforceable because of CLI's inequitable conduct.  Even though recipients of CLI/Forgent's demands have informed CLI/Forgent and its attorneys of the substantial invaliding prior art pertaining to the '672 patent, including the Widcom VTC-56, CLI/Forgent has persisted in its assertions and demands.

64.    CLI, under the direction of Forgent, filed the Texas Actions alleging patent infringement against manufacturers of JPEG-enabled products, including Microsoft customers, as alleged above.  As with CLI/Forgent's threats of litigation and demands for royalty payments prior to litigation, CLI's lawsuits are objectively baseless, because no objectively reasonable litigant would expect success on the merits of those infringement claims, given CLI's fraud on the Patent Office, its inequitable conduct, and the prior art invalidating the '672 patent.

65.    On information and belief, CLI/Forgent does not expect or desire an actual determination of the claims and defenses relating to the '672 patent on the merits.  On information and belief, the circumstances suggest that CLI/Forgent intentionally delayed filing suit against alleged infringers for at least two years after first making its allegations of infringement so that, with the threat of legal process (not the outcome of the process) weighing on manufacturers, CLI/Forgent could exploit the '672 patent without being forced to test the merits of its claims.  On information and belief, CLI filed suit only as a last resort and has done so to invoke the legal process (not its outcome) as an illegitimate method of extracting money from those sued.  Furthermore, on information and belief, CLI/Forgent intends to use these

1  lawsuits to intimidate others practicing the JPEG Standard with the threat of protracted and

2  expensive litigation if they do not obtain a license to the '672 patent.

3      66.    CLI/Forgent has further imposed on Microsoft's customers substantial costs in the

4  form of litigation defense costs and other costs.

5                              ## COUNT 1

6              ### Declaratory Judgment – Noninfringement of the '672 Patent

7      67.    Microsoft incorporates by reference the allegations in paragraphs 1 through 66

8

9  above.

10     68.    This is an action for declaratory judgment of noninfringement of any valid claim

11 of the '672 patent.

12     69.    Microsoft has an objectively reasonable apprehension that CLI will continue to

13 pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a

14 patent infringement suit against Microsoft.  CLI has already sued Microsoft's customers for

15

16 allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that

17 incorporate Microsoft JPEG-enabled products.

18     70.    CLI has alleged, and continues to allege, that CLI is a current owner of all right,

19 interest and title in and to the '672 patent.

20     71.    CLI has alleged, and continues to allege, that Microsoft's customers have been

21 and are making, using, offering for sale, importing and selling devices:

22

23              at least portions of which are designed to be at least partly
               compliant with the JPEG standard as defined by CCITT
24              Recommendation T.81 approved on September 18, 1992, titled
               "Information Technology – Digital Compression and Coding of
25              Continuous Tone Still Images – Requirements and Guidelines," the
               identical text of which is also published as ISO/IEC International
26              Standard 10918-1, or with any version or variance thereof defining
               a lossy compression scheme.
27

28

72.    CLI has alleged that Microsoft and/or its customers have committed, actively induced, and contributed to, and continue to commit, actively induce, and contribute to, acts of patent infringement.

73.    CLI alleges that Microsoft's customers alleged infringement is willful and deliberate and that irreparable injury has been caused to CLI.

74.    Microsoft denies CLI's allegations with respect to Microsoft's and its customers' use of Microsoft Products. Microsoft's Products, as used by Microsoft or its customers, have not infringed and currently are not infringing any valid claim of the '672 patent, either literally or under the doctrine of equivalents, nor are Microsoft or its customers actively inducing or contributing to infringement of the '672 patent.

75.    Accordingly, there exists an actual judicial controversy between Microsoft and Defendants concerning whether the claims of the '672 patent are not infringed by Microsoft or its customers.

76.    Microsoft desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the noninfringement of the '672 patent.

## COUNT 2

### Declaratory Judgment – Invalidity of the '672 Patent

77.    Microsoft incorporates by reference the allegations in paragraphs 1 through 76 above.

78.    This is an action for declaratory judgment of the invalidity of any and all claims of the '672 patent.

79.    Microsoft has an objectively reasonable apprehension that CLI will continue to pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a patent infringement suit against Microsoft.  CLI has already sued Microsoft's customers for allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that incorporate Microsoft JPEG-enabled products.

80.    The '672 patent and its claims are invalid because they fail to comply with the conditions and requirements for patentability set forth in Title 35, United States Code, including but not limited to the provisions of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 118 and 256.

81.    Accordingly, there exists an actual judicial controversy between Microsoft and Defendants concerning whether the claims of the '672 patent are invalid.

82.    Microsoft desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above.  Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the invalidity of the '672 patent.

## COUNT 3

### Declaratory Judgment – Unenforceability Based on Inequitable Conduct

83.    Microsoft incorporates by reference the allegations in paragraphs 1 through 82 above.

84.    This is an action for declaratory judgment of the unenforceability of all claims of the '672 patent.

85.    Microsoft has an objectively reasonable apprehension that CLI will continue to pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a patent infringement suit against Microsoft.  CLI has already sued Microsoft's customers for

allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that incorporate Microsoft JPEG-enabled products.

86.     The '672 patent is unenforceable because of inequitable conduct by, but not limited to, the persons identified above who were substantively involved in the prosecution of the '630 application.

87.     Every person substantively involved in the preparation and prosecution of the '630 application had a duty of candor and good faith, including a duty to disclose information of which they were aware that was material to the examination of the '630 application, when dealing with the Patent Office during the prosecution of the '630 application.

88.     On information and belief, the Widcom VTC-56, among other things, was and is material to the patentability of the '672 patent, and there is a substantial likelihood it would have been considered important to a reasonable patent examiner reviewing the '630 application.

89.     On information and belief, the persons substantively involved in the preparation and prosecution of the '630 application intentionally misled and deceived the Patent Office by failing to disclose the Widcom VTC-56, despite knowledge of the Widcom VTC-56's capabilities, as alleged above.

90.     On information and belief, these breaches in the duties owed to the Patent Office by the persons substantively involved in the preparation and prosecution of the '630 application were committed with the intent to deceive and/or mislead the Patent Office.

91.     On information and belief, the Patent Office relied on the material acts, omissions and/or misrepresentations recited above and was thereby persuaded to improperly allow the '630 application to issue as the '672 patent.

1    92.    On information and belief, as a result of the aforementioned acts, omissions

2  and/or misrepresentations by those substantively involved in the preparation and prosecution of

3  the '630 application, the '672 patent is unenforceable because of inequitable conduct.

4    93.    Accordingly, there exists an actual judicial controversy between Microsoft and

5

6  Defendants concerning whether the claims of the '672 patent are unenforceable.

7    94.    Microsoft desires and requests a judicial determination and declaration of the

8  respective rights and duties of the parties based on the disputes recited above.  Such a

9  determination and declaration are necessary and appropriate at this time so that the parties may

10  ascertain their respective rights and duties regarding the unenforceability of the '672 patent.

11  **COUNT 4**

12  **Declaratory Judgment – Unenforceability Based on Laches**

13    95.    Microsoft incorporates by reference the allegations in paragraphs 1 through 94

14

15  above.

16    96.    This is an action for declaratory judgment of the unenforceability of the '672

17  patent based on the equitable doctrine of laches.

18    97.    Microsoft has an objectively reasonable apprehension that CLI will continue to

19  pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a

20  patent infringement suit against Microsoft.  CLI has already sued Microsoft's customers for

21

22  allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that

23  incorporate Microsoft JPEG-enabled products.

24    98.    On information and belief, CLI/Forgent has long known of Microsoft's, and its

25  customers', use of the JPEG Standard and Microsoft Products.

26    99.    Microsoft's, and its customers', use of the JPEG Standard has been pervasive,

27  open and notorious, including but not limited to their use of the JPEG Standard in multiple

28

products, including Microsoft Products, that are widely available, as well as the extensive

advertising and media coverage of JPEG-enabled products and Microsoft Products.

100.   On information and belief, CLI/Forgent's delay in filing an infringement suit to

enforce the '672 patent is unreasonable and inexcusable.

101.   On information and belief, as a result of CLI/Forgent's unreasonable and

inexcusable delay in filing suit, Microsoft and its customers have been materially prejudiced both

from their changes in economic position and from the loss of evidence.  This prejudice includes,

but is not limited to, their inclusion of the JPEG Standard in their products and their investment

of substantial resources unrelated to the alleged infringement that could have been avoided if

CLI/Forgent had filed an infringement action sooner.  Furthermore, because of CLI/Forgent's

delay, Microsoft and its customers have lost both documentary and witness evidence relevant to

their defense of the infringement action.

102.   Because of CLI/Forgent's unreasonable and inexcusable delay in filing suit and

the prejudice to Microsoft and its customers from that delay, equity requires that CLI/Forgent be

barred from enforcing the patent.

103.   Accordingly, there exists an actual judicial controversy between Microsoft and

CLI/Forgent concerning whether the claims of the '672 patent are unenforceable because of

laches.

104.   Microsoft desires and requests a judicial determination and declaration of the

respective rights and duties of the parties based on the disputes recited above.  Such a

determination and declaration are necessary and appropriate at this time so that the parties may

ascertain their respective rights and duties regarding the unenforceability of the '672 patent.

## COUNT 5

**Declaratory Judgment – Unenforceability Based on Equitable Estoppel**

105.    Microsoft incorporates by reference the allegations in paragraphs 1 through 104 above.

106.    This is an action for declaratory judgment that CLI's claims for relief are barred in their entirety by the doctrine of equitable estoppel.

107.    Microsoft has an objectively reasonable apprehension that CLI will continue to pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a patent infringement suit against Microsoft.  CLI has already sued Microsoft's customers for allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that incorporate Microsoft JPEG-enabled products.

108.    CLI/Forgent's enforcement of the '672 patent is barred in its entirety by the doctrine of equitable estoppel.  This estoppel is created by, but is not limited to, CLI's conduct and misrepresentations made during its participation in the adoption of the JPEG Standard, and CLI/Forgent's continued silence during the years Microsoft and its customers have incorporated the JPEG Standard into their products.

109.    On information and belief, CLI knew the technical details of the proposed JPEG Standard, having participated in the review of the development of the underlying technology and having voted multiple times to approve the JPEG Standard.

110.    Despite its knowledge of the proposed JPEG Standard and asserted belief that the '672 patent covered that standard, CLI failed to disclose any purported relevance of the '672 patent to the JPEG Standard.  CLI/Forgent remained silent about the '672 patent for years while Microsoft and its customers invested in their use of the JPEG Standard.

111.    CLI's conduct in the JPEG standard-setting effort, coupled with CLI/Forgent's misleading silence about the purported relevance of the '672 patent to the JPEG Standard both prior to and after the adoption of the standard, lulled Microsoft and its customers into believing that CLI had no alleged patent interests that might affect the JPEG Standard. Microsoft and its customers reasonably relied on CLI's conduct and misleading representation that the '672 patent was not relevant to the JPEG Standard, causing them to support the JPEG Standard and/or implement the standard in their products with the reasonable belief that the JPEG Standard did not include the subject matter purportedly claimed by the' 672 patent.

112.    On information and belief, if CLI had disclosed the purported relevance of the '672 patent to the JPEG Standard, the JPEG committee would have adopted any one of a number of readily-available and technically feasible alternatives.

113.    Microsoft and its customers were and continue to be prejudiced by CLI/Forgent's ambush strategy, including but not limited to the threat to the millions of dollars in resources and years of investment in research, development, manufacturing and marketing of products that employ the JPEG Standard.

114.    Accordingly, there exists an actual judicial controversy between Microsoft and Forgent/CLI concerning whether the CLI's claims for relief are barred by equitable estoppel.

115.    Microsoft desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '672 patent.

## COUNT 6

### Declaratory Judgment – Unenforceability Based on Patent Misuse

116.    Microsoft incorporates by reference the allegations in paragraphs 1 through 115 above.

117.    This is an action for declaratory judgment that CLI's claims for relief are barred by the doctrine of patent misuse.

118.    Microsoft has an objectively reasonable apprehension that CLI will continue to pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a patent infringement suit against Microsoft. CLI has already sued Microsoft's customers for allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that incorporate Microsoft JPEG-enabled products.

119.    The '672 patent is unenforceable for continuing patent misuse by reason of CLI/Forgent's unlawful attempts to enforce the '672 patent, as alleged above.

120.    CLI/Forgent seeks to obtain the economic advantage of an improper injunction and monetary damages against Microsoft's customers, despite CLI/Forgent's knowledge that the '672 patent is invalid and unenforceable because of CLI/Forgent's unlawful conduct as alleged above.

121.    Accordingly, there exists an actual judicial controversy between Microsoft and Defendants concerning whether CLI's claims for relief are barred by CLI/Forgent's patent misuse.

122.    Microsoft desires and requests a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited above. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the '672 patent.

1

## COUNT 7

2

### Declaratory Judgment – Implied License

3    123.    Microsoft incorporates by reference the allegations in paragraphs 1 through 122

4    above.

5

6    124.    This is an action for declaratory judgment that CLI's claims for relief are barred,

7    in whole or in part, by the doctrine of implied license. This implied license was created by, but

8    is not limited to, (a) CLI's conduct, misleading silence, and misrepresentations about the

9    purported relevance of the '672 patent during its participation in the JPEG Standard, (b) CLI's

10    acquiescence to Microsoft's, and its customers', inclusion of the JPEG Standard in their products

11    since the 1992 adoption of the JPEG Standard, and (c) the doctrine of patent exhaustion.

12    125.    Microsoft has an objectively reasonable apprehension that CLI will continue to

13

14    pursue its allegations of infringement against Microsoft's customers, and that CLI will bring a

15    patent infringement suit against Microsoft. CLI has already sued Microsoft's customers for

16    allegedly infringing the '672 patent by making, using, offering to sell and/or selling products that

17    incorporate Microsoft JPEG-enabled products.

18    126.    CLI has alleged, and continues to allege, that CLI is a current owner of all right,

19    interest and title in and to the '672 patent.

20    127.    On information and belief, CLI's claims for relief are barred, in whole or in part,

21

22    by the doctrine of implied license.

23    128.    Accordingly, there exists an actual judicial controversy between Microsoft and

24    Defendants concerning whether the CLI's claims for relief are barred as alleged above.

25    129.    Microsoft desires and requests a judicial determination and declaration of the

26    respective rights and duties of the parties based on the disputes recited above. Such a

27

28

1    determination and declaration is necessary and appropriate at this time so that the parties may

2    ascertain their respective rights and duties regarding the '672 patent.

### COUNT 8

#### Equitable Estoppel

130.    Microsoft incorporates by reference the allegations in paragraphs 1 through 129 above.

131.    CLI/Forgent's enforcement of the '672 patent is barred in its entirety by the doctrine of equitable estoppel. This estoppel is created by, but is not limited to, CLI's conduct and misrepresentations made during its participation in the adoption of the JPEG Standard, and CLI/Forgent's continued silence during the years Microsoft and its customers have incorporated the JPEG Standard into their products.

132.    On information and belief, CLI knew the technical details of the proposed JPEG Standard, having participated in the review of the development of the underlying technology and having voted multiple times to approve the JPEG Standard.

133.    Despite its knowledge of the proposed JPEG Standard and asserted belief that the '672 patent covered that standard, CLI failed to disclose any purported relevance of the '672 patent to the JPEG Standard. CLI/Forgent remained silent about the '672 patent for years while Microsoft and its customers invested in their use of the JPEG Standard.

134.    CLI's conduct in the JPEG standard-setting effort, coupled with CLI/Forgent's misleading silence about the relevance of the '672 patent to the JPEG Standard both prior to and after the adoption of the standard and other conduct, lulled Microsoft and its customers into believing that CLI had no alleged patent interests that might affect the JPEG Standard. Microsoft and its customers reasonably relied on CLI's misleading representation that the '672

1  patent was not relevant to the JPEG Standard, causing them to support the JPEG Standard and/or

2  implement the standard in their products.

3      135.   On information and belief, if CLI had disclosed the purported relevance of the

4  '672 patent to the JPEG Standard, the JPEG committee would have adopted any one of a number

5

6  of readily-available and technically feasible alternatives.

7      136.   Microsoft and its customers were and continue to be prejudiced by CLI/Forgent's

8  ambush strategy, including but not limited to the threat to the millions of dollars in resources and

9  years of investment in research, development, manufacturing and marketing of products that

10  employ the JPEG Standard.

11      137.   CLI/Forgent is barred from enforcing the '672 patent against Microsoft as a result

12  of CLI's misleading silence, misrepresentations and the other unlawful conduct alleged above.

13

14                                **COUNT 9**

15                              **Patent Misuse**

16      138.   Microsoft incorporates by reference the allegations in paragraphs 1 through 137

17  above.

18      139.   The '672 patent is unenforceable for continuing patent misuse, by reason of

19  CLI/Forgent's unlawful attempts to enforce the '672 patent as alleged above.

20      140.   CLI/Forgent seeks to obtain the economic advantage of an improper injunction

21  and monetary damages against Microsoft and its customers, despite CLI/Forgent's knowledge

22  that the '672 patent is invalid and unenforceable due to CLI/Forgent's unlawful conduct as

23  alleged above.

24

25

26

27

28

## COUNT 10

### Calif. Bus. And Prof. Code §§ 17200 et seq.

141.    Microsoft incorporates by reference the allegations in paragraphs 1 through 140 above.

142.    CLI/Forgent's deceptive trade practices, misrepresentation, and bad faith attempts to enforce the '672 patent constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200.

143.    CLI/Forgent also has engaged in unfair competition because, in the course of its business, CLI/Forgent disparaged Microsoft's goods, services, and businesses by falsely and misleadingly alleging that Microsoft's customers' products infringe the '672 patent and that consumers will not be able to continue using the Microsoft products that incorporate the JPEG standard, in violation of Calif. Bus. And Prof. Code §§ 17200 et seq.

144.    Further, CLI/Forgent has engaged in unfair competition because, in the course of its business, CLI/Forgent has engaged in other conduct that creates a likelihood of confusion or misunderstanding, including but not limited to engaging in baseless patent litigation, in violation of Calif. Bus. And Prof. Code §§ 17200 et seq.

145.    On information and belief, CLI/Forgent has acted in bad faith while engaging in unfair competition.

146.    Microsoft has been harmed or can reasonably expect to be harmed by CLI/Forgent's unfair competition.  This harm will continue or can reasonably be expected to continue as long as CLI/Forgent continues to falsely assert that the '672 patent is infringed by the use of Microsoft products that are compliant with the JPEG Standard.

147.    As a result of their violation of California Business and Professions Code § 17200, CLI/Forgent have unjustly enriched itself at the expense of Microsoft.

148.    To redress this unjust enrichment, CLI/Forgent should be required to disgorge its illegal gains for the purpose of making full restitution to Microsoft.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft prays for the following relief:

    i)    A judgment declaring that Microsoft has not infringed and does not infringe, in any manner or in any way, any valid claim of the '672 patent;

    ii)    A judgment declaring that each claim of the '672 patent is invalid;

    iii)    A judgment declaring that the '672 patent is unenforceable and without any force or effect against Microsoft, their officers, agents, servants, employees, licensees, assigns, customers and attorneys;

    iv)    A judgment that CLI and Forgent are barred from enforcing the '672 patent based on the equitable doctrine of laches;

    v)    A judgment that CLI and Forgent are barred from enforcing the '672 patent based on the equitable doctrine of estoppel;

    vi)    A judgment that CLI and Forgent are barred from enforcing the '672 patent based on their misuse of the '672 patent;

    vii)    A judgment that Microsoft has an implied license for use of the '672 patent;

    viii)    A judgment that CLI and Forgent have engaged in unfair competition in violation of Calif. Bus. And Prof. Code §§ 17200 et seq.

    ix)    A permanent injunction under Calif. Bus. And Prof. Code §§ 17200 et seq.

    x)    A permanent injunction prohibiting further or future enforcement of the '672 patent;

xi)   An award of damages adequate to compensate Microsoft for the harm caused to it as a result of Defendants' unlawful conduct;

xii)  A judgment deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Microsoft to an award of reasonable attorneys' fees, expenses and costs in this action; and

xiii) Such other and further equitable or legal relief as the Court or a jury deems proper, including the disgorgement by CLI of all sums that they have obtained pursuant to the scheme described herein.

## JURY TRIAL DEMANDED

Microsoft demands a trial by jury as to all issues and causes of action so triable herein, pursuant to Federal Rule of Civil Procedure 38.

## CERTIFICATION OF INTERESTED PARTIES PURSUANT TO CIVIL L.R. 3-16

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations or persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Acer America Corporation

Agfa Corporation

AudioVox Electronics Corporation

BancTec, Inc.

Benq America Corporation

Color Dreams, Inc. (*doing business as* Stardot Technologies)

Dell, Inc.

Google, Inc.

Scansoft, Inc.

Sun Microsystems, Inc.

TiVo, Inc.

Yahoo!, Inc.

The foregoing entities appear as either a Plaintiff or Defendant in member cases to the Multi District Litigation ("MDL") located in this District and named *In re Compression Labs, Inc., Patent Litigation*, No. CV 01654 PJH.  The MDL member cases are as follows:

*Compression Labs, Inc. v. Agfa Corp.*, No. CV 05-00923 PJH

*Compression Labs, Inc. v. Dell, Inc., et. al.*, No. CV 05-00924 PJH

*Compression Labs, Inc. v. Acer America, Corp., et. al.*, No. CV 05-00925 PJH

*Audiovox Corp., et. al. v. Compression Labs, Inc., et. al.*, No. CV 05-01225 PJH

*Yahoo, Inc. v. Compression Labs, Inc., et. al.*, No. CV 05-01226 PJH

*Agfa Corp., et. al. v. Compression Labs, Inc., et. al.*, No. CV 05-01228 PJH

*Sun Microsystems, Inc. v. Compression Labs, Inc. et. al.*, No. CV 04-3124 PJH

*Google v. Compression Labs, Inc., et. al.*, No. CV 04-03934 PJH

The above named MDL and its member cases concern the same patent, U.S. Patent No. 4,698,672, and similar patent infringement claims and will involve the same questions of law.

Dated:  April 15, 2005

David T. Pritikin
Richard A. Cederoth
Douglas I. Lewis
SIDLEY AUSTIN BROWN & WOOD
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
Phone:  (312) 853-7000
Fax:  (312) 853-7036

MICROSOFT CORPORATION'S COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan K. Anderson
SIDLEY AUSTIN BROWN & WOOD LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 772-1200
Fax: (415) 772-7400

ATTORNEYS FOR MICROSOFT
CORPORATION

**MICROSOFT CORPORATION'S COMPLAINT**

SF1 1410850v.1